UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

REINALDO C. ACOSTA,

        Plaintiff,

        v.                                            Case No. 20-C-795

CINDY BARTER, et al.,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Reinaldo Acosta, who is currently representing himself and serving a state prison sentence at Redgranite Correctional Institution, brought this action pursuant to 42 U.S.C. § 1983, alleging Defendants Cindy Barter, Angela Thompson, Dr. K. Labby, Dr. Tannan, Z. Schroeder, T. Jaeger, and RN W. Borgen violated his constitutional rights. In particular, Plaintiff claims Nurse Barter failed to give him a sleeve for his knee in June 2018, failed to schedule him to see a doctor for his knee in August 2018, and failed to treat his knee in December 2018; the members of the Redgranite Correctional Institution Special Needs Committee denied his request for a low bunk restriction in December 2018; and Dr. Tannan refused to authorize a low bunk restriction or give Plaintiff pain medication in December 2018. This case was transferred to this district from the District Court for the Western District of Wisconsin on May 27, 2020. This matter comes before the court on Defendants' motion for partial summary judgment on exhaustion grounds and for judgment on the pleadings. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

Plaintiff alleges that, on June 21, 2018, his right knee buckled while playing basketball in the courtyard. He was taken to the Health Services Unit (HSU). A nurse ordered a knee sleeve for his knee, but he never received it. Later that day, he was told he would be scheduled to see the doctor, but he did not see one. On August 8, 2018, Plaintiff submitted a Health Services Request (HSR) stating, "My knee is hurting bad real bad it feels like bone on bone and it's buckling." Compl. ¶ 12, Dkt. No. 1. The next day, Plaintiff was called to HSU for an appointment with Barter. Barter told him that it was just a knee strain and that she would set up an appointment with a doctor. Plaintiff asserts the appointment was never scheduled. On August 23, 2018, Plaintiff submitted an HSR stating, "My knee [is] still hurting real bad. You told me to write back if the pain won't stop." *Id.* ¶ 14. Nurse Brunk responded on August 26, 2018, advising Plaintiff that he had a follow up appointment scheduled for next week but to let HSU know if he needed to be seen sooner. Plaintiff asserts that he was not provided medical treatment or pain medication.

On October 13, 2018, Plaintiff submitted another HSR stating, "I already paid yall [sic] to see me about my knee but I was never seen. So please give me back my $7.50 . . . or let me see the Doctor." *Id.* ¶ 15. Nurse Klenke responded to the HSR the following day, indicating that he was on the doctor's schedule for October 9, 2018, and that she was not sure why the appointment was delayed but would make sure to schedule him for another appointment. Plaintiff saw Dr. Adebila, who ordered an MRI. Plaintiff was taken to Agnesian Health Care for the MRI on October 31, 2018. On November 18, 2018, Plaintiff submitting an HSR stating, "I got a MRI on my knees, I would like to know the outcome of the MRIs." *Id.* ¶ 19. Nurse Klenke responded that Plaintiff was scheduled to be seen in HSU. Plaintiff submitted another HSR on November 23, 2018, stating that the outside specialist had told him that he had osteoarthritis in both knees and

asking why he had not been given a knee brace or a bottom bunk restriction. L. Sievert responded to the HSR on November 26, 2018, stating that she would initiate the special needs process for him. Plaintiff alleges he was assigned a top bunk and had to climb a ladder without a railing, which caused pain and knee buckling.

Dr. Tannan saw Plaintiff on December 3, 2018, and explained what degenerative joint disease and osteoarthritis is. Plaintiff requested a lower bunk due to the pain of going up and down the ladder. Dr. Tannan denied his request but ordered Plaintiff Tylenol. On December 11, 2018, Plaintiff received notice of the Special Needs Committee's decision to deny his request for a lower bunk restriction. The Special Needs Committee consisted of T. Jaeger, the E Unit Manager, Z. Schroder, the H Unit Manager, RN Borgen, RN Thompson, LPN Sievert, and Dr. Labby. Later that day, Plaintiff submitted an HSR to HSU Manager Thompson requesting a second opinion on the Special Needs Committee's decision to deny his request for a lower bunk. Thompson forwarded the HSR to the Special Needs Committee on December 12, 2018. Plaintiff wrote a second HSR to HSU Manager Thompson stating, "I would like for you to please look at my special needs paperwork again and please give me a second opinion because I am in pain." *Id.* ¶ 25. This HSR was also forwarded to the Special Needs Committee.

HSU Manager Thompson explained that Plaintiff was not approved for a lower bunk restriction because he did not meet any of the listed criteria set forth in HS P&P 300:07. In particular, Plaintiff did not have significant functional limitations secondary to arthritis, musculoskeletal disorders, or neurological disorders; he did not have symptomatic cardiovascular disease; he was not obese or elderly; he was not postoperative; and he does not have a diagnosis for seizure disorder and is not blind. Although Plaintiff had moderate patellofemoral degenerative joint disease and partial thickness articular cartilage loss, she noted this was not a significant

3

functional limitation. She explained that, during Plaintiff's assessments, no deformity or loss of function had been noted. She also noted that he had been observed functioning on the unit. Dkt. No. 1-2 at 2–3.

On December 24, 2018, Plaintiff submitted an HSR complaining that he hurt his knee getting down from the top bunk. He asserted that his knee buckled and hyper-extended. Barter responded to the request the following day indicating that he would see a nurse and attaching educational material regarding knee strain.

On February 15, 2019, Plaintiff submitted an HSR stating that his knee still hurt and it buckled again this morning. Plaintiff saw Nurse K. Thompson later that day. Plaintiff asserts Thompson did nothing to help his pain, except advise him to continue taking Tylenol. Plaintiff told her that the Tylenol was ineffective.

Plaintiff submitted one inmate complaint regarding any of the claims in this case: RGCI-2018-26121, which only complained of the denial of a low bunk restriction. Defs.' Proposed Findings of Fact ¶ 2, Dkt. No. 22. Plaintiff submitted no inmate complaints concerning his claims against Nurse Barter or his claim against Dr. Tannan concerning a denial of pain medication. *Id.* ¶ 3.

## ANALYSIS

### A. Motion for Summary Judgment on Exhaustion Grounds

Summary judgment is appropriate when the moving party shows that the is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of showing that there are no facts to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d

4

925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

The PLRA provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A plaintiff's failure to properly exhaust each step of the process constitutes a failure to exhaust available administrative remedies. *Id.* The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 526, 532 (2002). The purpose of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Under the ICRS, an inmate

5

must file a complaint with the institutional complaint examiner (ICE) within 14 calendar days after the events giving rise to the complaint occur, unless good cause exists to excuse a delay. *Id.* § DOC 310.07(2). The ICE has the authority to return, investigate, or reject the complaint. *Id.* § DOC 310.10. The inmate may appeal the rejection of the complaint to the appropriate reviewing authority within 10 calendar days. *Id.* § DOC 310.10(10). The reviewing authority shall make a decision within 15 days following receipt of the recommendation or appeal of a rejected complaint. *Id.* § DOC 310.11(1). The reviewing authority's decision is final. An inmate may appeal the reviewing authority's decision within 14 days after the date of the decision by filing a typed or legibly printed request for review with the correction complaint examiner (CCE). *Id.* § DOC 310.12(1). After reviewing an appeal, the CCE recommends a decision to the Department of Corrections (DOC) Secretary, who adopts or rejects the recommendation. *Id.* §§ DOC 310.12; DOC 310.13. The failure to properly exhaust each step of the grievance process before filing a lawsuit constitutes a failure to exhaust administrative remedies. *Pozo*, 286 F.3d at 1025.

Defendants assert that the court should grant their motion for partial summary judgment on exhaustion grounds because Plaintiff failed to exhaust all available administrative remedies prior to filing suit on all of his claims except the lower bunk claim. Plaintiff asserts that he properly exhausted his administrative remedies because his inmate complaint should have alerted prison officials to all of his issues. In his inmate complaint, Plaintiff stated, "I have degenerative joint disease in both of my knees. I am in chronic and constant pain. I am being denied medical restrictions (i.e. bottom bunk; medical mattress; ect. [sic]), and therefore, subsequent accommodations of the Americans with Disabilities Act. The diagnoses was obtained through and at the bequest of Thompson . . . off-site MRI's. This constitutes deliberate indifference. I am requesting the treatment and rights deemed adequate with respect to the law of this State and the

6

Constitution." Dkt. No. 23-2 at 12. Plaintiff's complaints about Nurse Barter's failure to give him a sleeve for his knee in June 2018, to schedule him to see a doctor for his knee in August 2018, and to treat his knee in December 2018 as well as Dr. Tannan's refusal to give Plaintiff pain medication in December 2018 are not readily identifiable from Plaintiff's description of his grievances. In other words, his inmate complaint does not provide sufficient notice of these claims. Plaintiff did not properly exhaust his administrative remedies regarding his claims that Nurse Barter failed to give him a sleeve for his knee in June 2018, failed to schedule him to see a doctor for his knee in August 2018, and failed to treat his knee in December 2018 and that Dr. Tannan refused to give Plaintiff pain medication in December 2018. Therefore, Defendants are entitled to summary judgment on these claims.

### B. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the nonmovant. *Id.* To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants have moved for judgment on the pleadings on Plaintiff's claim that he was improperly denied a lower bunk restriction.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's

7

safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. To state a claim of deliberate indifference, the plaintiff must "establish that he suffered from 'an objectively serious medical condition' and that the 'defendant was deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

Defendants assert that Plaintiff has failed to state a deliberate indifference claim. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendant knew of, yet disregarded, an excessive risk to the plaintiff's safety. *Farmer*, 511 U.S. at 825, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to allege that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996).

Defendants maintain that it is clear from the face of the complaint and the attachments thereto that Dr. Tannan and the Special Needs Committee made their respective December 3 and December 11, 2018 decisions to deny Plaintiff's request for a lower bunk based on professional medical judgment. A "medical professional's treatment decisions will be accorded deference

8

'unless "no minimally competent professional would have so responded under those circumstances."'" *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). Dr. Tannan determined Plaintiff did not require a lower bunk and he prescribed pain medication. The Special Needs Committee denied Plaintiff's request for a lower bunk because it concluded Plaintiff did not meet the listed criteria set forth in HS P&P 300:07 and he had been observed on the unit functioning without issues. Dkt. No. 1-2 at 2–3. Plaintiff continued to be seen by medical staff, and staff directed Plaintiff to take his prescribed Tylenol for his pain. Plaintiff's desire for a lower bunk merely reflects a difference of medical opinion, which is not a ground for a claim of deliberate indifference.

Although Plaintiff may have disagreed with the type of treatment he received, mere disagreement with Defendants' treatment decisions does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("[T]he Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." (citation omitted)). Defendants' refusal to order a lower bunk restriction does not constitute deliberate indifference, as the decision was based on professional medical judgment. *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("[T]here is not one proper way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." (internal quotation marks omitted)). In addition, the nonmedical defendants who were members of the Special Needs Committee were entitled to rely on the judgment of the medical staff. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("[T]he law encourages non-medical security and administrative personnel at the jails and prisons

9

to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so.").

The allegations in Plaintiff's complaint and his attached documents do not sufficiently support a claim that Defendants' medical decisions were a substantial departure from accepted professional judgment. *See Estate of Cole by Pardue*, 94 F.3d at 261–62. Plaintiff has failed to state a deliberate indifference claim against Defendants. Accordingly, Defendants' motion for judgment on the pleadings is granted.

## CONCLUSION

For these reasons, Defendants' motion for partial summary judgment on exhaustion grounds and motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of August, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge